Good morning. Would the counsel who are going to argue the case please approach the bench, identify yourselves for the record, and let us know how much time you'd like for your argument, and if you have any questions, please let us know. Be mindful that the microphone is for recording purposes only, not for amplification. Good morning. I'm Sam Chellis. I represent Stonegate, the appellant, and would like a few minutes of rebuttal at the conclusion of the argument. How much would you like for your main argument? If the court will give me 20 minutes, I'd appreciate it. Very well. Good morning, Your Honors. Barry Conagher on behalf of the plaintiff, William Simon, and I will largely stand on my brief, respond, and take no more than 10 minutes. Very well. Thank you. Mr. Chellis? May it please the Court, this case involves, of course, golf carts, and the first issue is that there is no mandatory insurance on golf carts, and that is important because, generally speaking, uninsured motorist coverage follows when there's an obligation for mandatory insurance. When the law changed and the legislature decided that ATVs and golf carts should not be covered, the case is reflected from the change from Roberts to Insura from 1992 and then to 2003. The reason Insura is important is it goes through most other states, and it gives like a list of many other states and essentially holds that virtually no state requires mandatory insurance for golf carts, and therefore, generally speaking, golf carts are not required to have UM. The reason that that's important is the purpose of UM, uninsured motorist, is to duplicate what you would have had if there was mandatory insurance in the other vehicle. So if a golf cart is driving down the street and hits you, there's no mandatory insurance on that golf cart. That golf cart is not required to have insurance. There's no expectation of liability insurance, and so this issue was actually not contested in the underlying briefs because my limited friend agreed that there's no mandatory insurance on golf carts. But the fact that it's not required certainly doesn't mean that you can't provide it. That's true, and as an example to that, both these parties, the owner of the golf cart and the driver, went out and bought golf cart insurance after the accident. Unfortunately, they didn't buy it before the accident, and Stonegate doesn't sell it. And the reason it's important is there's a premium attached to it because these are vehicles that have no seat belts, no doors, no safety features. Some have no brakes, no lights, and they're not meant to be driven like automobiles. And children drive them. And unfortunately, children drive them. So in the case below, the judge did not rule that there was a mandatory insurance requirement, and counsel didn't contest it, and that leads us to the definition of insured under the policy. And here's where our disagreement is with our opponent. The endorsement controls. There's no ambiguity. The endorsement says that a person occupying your own auto, well, it's not an auto and he wasn't occupying it, and it goes on to say, or an auto you operate. Well, he wasn't operating his own auto. So standing first, we never get to the definition of an uninsured motor vehicle because the endorsement says he's not our insured for this purpose. Now, what does that mean in the endorsement? It goes on to a third sentence, which is the thing I think that we dispute, which is what happens when you're a passenger in a non-owned vehicle? This endorsement does not cover you. But doesn't the endorsement only amend Section 2 of the definition? Well, I would disagree, Your Honor, and here's why. It says the definition of insured is replaced. It says Section 2 of the definition of insured is replaced. But there's a period between those. It doesn't say Section 2. You guys don't know how to do punctuation. Well, I can't answer for that, the period, but I think the period matters. It says Section 2 of the definition of insured is replaced and insured is then redefined in this section. What other meaning could the endorsement have except to redefine the definition of insured? In other words, it can't have definition of insured means something here and then it means something somewhere else. If you were right, though, the name insured is not covered under the policy because it's only any other person occupying it. Right? Yes. Any other person occupying your covered auto or any auto you're driving. What about you? What about the name insured? Are they not covered? Well, they are covered. They are covered for the same purpose, for your covered auto, and the other thing is any other person would include the insured. It wouldn't exclude the insured. The name insured is the person who is always covered, but the question is what is he covered for, and it says occupying your covered auto or any other auto operated by you, and here's the reason you matter. You has to mean the name insured. Your covered auto means you. The word your can only reflect you because the definition of you in the policy is the name insured. I agree with that. I think the word other than has me confused. I guess I would answer by saying neither the judge below nor my learned friend argued that there was an ambiguity, but to answer your question. Yes, I think they say that only Section 2 is amended. And I understand that, but answering your question directly, the word your means the name insured, and any other operated by you means you, the name insured, and so the opposition is that that replaced the definition of insured, and it does include the name insured, but it does not cover a non-owned auto, and I would also emphasize that, of course, the word auto is constantly distinguished from motor vehicle. If they wanted to buy insurance from an ATV or golf cart, they could have done so, but they chose not to pay a premium for that, and, in fact, this carrier doesn't, as we showed in the evidence, even sell golf cart insurance. Judge, Justice Nichol, if we go to the second point, let's assume for the moment I'm wrong, and I hope you don't, but having argued before you many times in 2508, let's assume I'm wrong, but we get to the second step of the argument, which is, is this an uninsured motor vehicle? And here we argue that this was a question of fact. It shouldn't have been decided at summary judgment. When you look at page C72, which is the photo of this scene that they gave us, in the photo you see this enormous grassy area, and then you see the side of the road, and then you see the lanes. There is nobody who claims he had an accident on the lanes. At best, the front edge of his tire might have touched the edge of the side, but this vehicle, golf cart, turned over on the grassy median. We all would acknowledge this is a golf cart not intended for use on the public roads. Justice, Judge Garcia said, we broadened the definition of uninsured motor vehicle in the fourth section by saying a vehicle not intended for use on the public road that was used on the public road. Whether it was used on the public road is a question of fact. It shouldn't have been decided as a matter of summary judgment. We argued that below, that even by the most generous definition, they say that the golf cart turned and was going up toward a parking area. Well, every piece of evidence is it turned over and fell on top of the gentleman on the grassy median. This is not the public road. And so that should have been not a summary judgment issue. I would emphasize lastly that... I think that the witnesses obviously would have testified, but more urgently, Judge Garcia didn't even make a finding. He didn't even discuss it. We argued in the briefs that this is a question of fact. He didn't say it wasn't or it was. He just simply passed it by. Now, I understand that you can affirm or deny without making your own findings,  but one way or the other, he didn't even discuss it. And we did raise it extensively in the briefs. So there was no such finding. I think the major importance in the last, let's say, three years that appellate court cases have come down, a recent case, which is Safe Auto v. Fry, said, look, we're not going to extend the no license clause to passengers because we think it's unfair because a passenger doesn't interrogate the driver whether he has insurance. But this is different. This is a passenger getting in a golf cart. There is absolutely no expectations of liability insurance, and they didn't buy liability insurance. They bought insurance on four vehicles. That's what they paid the premium for. Golf cart insurance is expensive, and they chose not to purchase it. And for those reasons, we believe that... What is the potential of being injured by an uninsured motor vehicle? They bought insurance for the intent of being injured by an uninsured... In the event that they got injured while occupying a motor vehicle that was uninsured. I would add a sentence. A motor vehicle that was uninsured that is subject to mandatory insurance. Well, that's how we always interpret uninsured motors. When you say we, you're talking about the insurance company. No, no, no, I'm talking about the courts, and that's why I was going to mention American Access v. Risen and State Farm v. Fry. They looked at the cases and said, we assume that a permissive user of a motor vehicle must have uninsured motorists when that motor vehicle is subject to mandatory insurance. There is no such presumption in the answer to your question when that vehicle is not subject to mandatory insurance. I authored Safe Auto. In Safe Auto, the driver of the car was unlicensed. Correct. And Justice Fitzgerald years earlier said, you have no right to expect to be insured if you don't have a driver's license. Under MUNOS, yes. Right. And I refuse to extend that to a passenger who is in a car driven by an unlicensed driver. Correct. Totally different situation here. The way I read this policy is the insurer bought an automobile policy that said, in the event you or one of your passengers is injured by a motor vehicle that is not covered by insurance, we'll cover you. Now, are you saying that a golf cart is not a motor vehicle? Nowhere in this policy says a motor vehicle has to have mandatory insurance. It doesn't say that. I know you don't like to criticize Judge Whitver. Simple yes or no will do. I'm not sure of the answer. I'm really not sure because there are cases I'm not allowed to discuss that sort of discuss this Rule 23s and everything, and I don't really think that's a 100% decided issue whether a golf cart is a motor vehicle. I understand there are cases discussing motorized lawn mowers and whether that's a motor vehicle. So I'm not 100% sure of the answer. I'm going to ask you an easier question. What's the fog line? The fog line is generally, as I understand it, that the difference between the lanes you're in and that's the fog line. So that's a road. The actual lane. Right. The shoulder. Is outside the fog line. Right. And certainly this grassy median is outside the fog line. And if you disagree with me on the definition of insured, I would emphasize to you Judge Garcia never made a finding. He never said anything one way or the other, and how would you decide where this accident took place without an evidentiary hearing? It seems to me, as we argued below, that was the error, if you disagree with me on the definition of insured. And even reading the evidence that they gave, the serious affidavits, I know my time is about to be up. Even reading the affidavits they gave, there's a strong ambiguity about where this accident took place. And if it took place not on the public road, and we would argue the public road is here, the actual lanes, that an evidentiary hearing or trial should have been had on an issue, because if you disagree with me on insured, even under his finding, the question is did the accident take place on the public road? Did you dispute the claimant's claim that they were driving with some of the wheels on the shoulder and some of the wheels on the grassy adjacent area? No, we disputed that that was the public road. So we dispute that... We disputed what was the public road? That either the grassy part or the shoulder was the public road. There were different elevations. Right, and that was one of the issues that came up, is they say they turned to a different elevation. They were a completely different place. Was it your contention below that having two of the golf cart wheels and the shoulder constituted not being on a road? It was one wheel, but yes, I dispute that that is the public road. We disputed that below. So having part of the vehicle on the shoulder and part of the vehicle off the shoulder onto the grass makes it not on the road? Yes. And did Judge Garcia rule that you're wrong, it's part of the road? He didn't make any finding one way or the other. He didn't discuss it in his, when you read his, there is a transcript of it here, and he didn't discuss it at all. And I want to emphasize why I think that's important, just in my last second. Yeah, we get it, because you're only insured if you're injured on the road by an uninsured vehicle that is a motorized vehicle that happens to have four people and golf clubs on it. And I think it's especially important here because golf carts have no safety features. There's cases that we cited that discuss cars are not supposed to be driving on the shoulder or the grassy median, and they have safety features. Yeah, but motor vehicle. Yes. Right? The insurance company controls what they're going to insure and what risks they're going to insure. Yes. They're eminently capable of saying motor vehicles except motor vehicles that carry people on golf carts. They're capable of saying scooters, motorbikes, you know, land cruisers or whatever they do. Yes, that's true. To go back to the definition of the word insured, that's true. No, motor vehicle. Oh, and that is true also. Right. And that is true also. But, again, even if I'm wrong on the definition of insured where I can read the writing on the wall, or I've tried to in many years of doing this, I still think the strongest argument, and indeed a very powerful argument, is when you look at these pictures, that should have been an evidentiary issue in a trial. One part of one wheel is allegedly on the side of the shoulder. And as Justice Simon mentioned, when the golf cart turned, there were completely different elevations. That indicates to me a strong factual fact that that's not the public road, and, therefore, that should have been a factual issue, and the Court erred, and you should review DeNovo and rescind it for trial on that issue. Okay. Thank you very much.  Mr. Kornberg. Thank you, Your Honor. I'm going to skip the part of my argument dealing with the basic part of the policy, that Mr. Simon is an insured. This is a motor vehicle. I think if motor vehicle is ambiguous, which we do not believe it is, it gets interpreted against Stonegate. He was clearly injured, and he is entitled to make a recovery if Mr. McGinnis negligently operated that golf cart and caused the injury. So he satisfies the primary basic part of the policy for uninsured motorist coverage. We really, in the trial court, the focus was the endorsements and the alleged change to the policy in whether Mr. Simon was an insured or whether the vehicle was an uninsured motor vehicle. That was the focus of the large part of the briefing, and we had cross motions for summary and our oral argument. The argument that Mr. Shulis now says is his primary one or the best one, which is if there's a question of fact, was raised below by him but was certainly not the focus of the argument below. I don't think that matters a whole lot because the evidence of where this happened and how it happened is uncontested. Both Mr. McGinnis and Mr. Simon testified very clearly that they had operated on a whole handful of roads in this lakefront community. This is southwest Michigan with all sorts of little inland lakes, and there are little roads that go around through these cottage communities, and lots of folks drive golf carts along the roads in that community. And that is what they were doing that evening because Mr. Simon's wife's best friend was looking at home. So the two men were in the front of the golf cart, the two women were sitting on the back seat of the golf cart, and they were driving through neighborhoods and had been on five or six or seven different roads. They were on the way back home traveling down the primary road that runs through these lake areas called M-152. It is a two-lane road with a divided line in the middle. The fog line is the right hand, the white line to your right. It is called a fog line, a little anecdotal info, so that if it's foggy, you focus on that white line, your headlight shines on it, and you stay just to the left of it, and you're in your lane. That's why it is called a fog line. What both Mr. McGinnis and Mr. Simon testified to, and I can read from their depositions, which are part of the record, but they clearly testified that they were driving down the lane of M-152 along the fog line. As the photograph reflects, which is the best picture, I think, at least in the record as I saw them as supplemental record, page 72 and 73, there is a large paved shoulder to the right of the fog line, and Mr. McGinnis describes that he's driving down the road on the pavement, and Mr. Sheilas asked a couple of follow-up questions, were you on the pavement? And he said yes, and he pointed, and he said, I'm on the blacktop. So he's driving along the blacktop. Just so we understand where he's going, there is not like a right-hand turn to drive into the front entrance or through this ditch into the school property. Mr. McGinnis lives a little farther up the road. I don't have a measurement, but it's not far. We can actually look at a map. There are maps attached in the record as well, but there's a traffic light just a little bit farther up the road. You turn right, and that's the road Mr. McGinnis lives on, a handful of houses down the street. So they're on their way back home, going straight east on M-152, planning to make a right-hand turn. What happens is this second driveway that sticks out from the school, that's on the backside of this sign, there is a change in elevation. There's a drop-off of the blacktop to the gravel shoulder. There's a drop-off, as is not uncommon with paved roadways. And then when you get to this paved driveway coming out, you now have a little bit of a U-section where there's a drop-off. One wheel, the front right wheel, hit that double drop-off effectively and caused the cart to flip over. There is no other testimony. The only other testimony that may be developed at the trial court would be the testimony of the women riding on the back of the cart who would also say ostensibly that they were on the paved roadway. Mr. Simon testified that they were on the roadway. He noticed that Mr. McGinnis had moved over a little farther to the right, and he was starting to turn around thinking there might be a vehicle coming, and it happens. So I don't think there's any doubt. There is no question of fact how and where this happened. It is not, as I feel like Mr. Sheila seems to imply, that they were riding in this angled ditch that is the grassy area farther to the south of the lane of travel. I have no disagreement that if there was any evidence that they were driving in that ditch or along the bank of that ditch at an angle that at best for me there would be a question of fact as to whether they were on the roadway. I suppose we might need to do some surveys and see what the actual legal right-of-way was, but I think I would have a much, much harder case if they were operating in the grassy embankment. But there is no evidence that they were operating in the grassy embankment. All of the evidence is that They discussed that there's dirt and grass and paved driveway, so you have all of these three different elements involving these moving vehicles. Did you move for summary judgment on liability or maybe not? Yeah, on coverage. On coverage. We moved for cross motions for summary. Correct, Your Honor. So you were saying there's no genuine issue of fact with respect to whether he was on the roadway. Correct. And I made that argument in the brief and in the oral argument. We did not spend anywhere near the amount of time in the trial court on this issue as we are here today. We were much more focused on is Mr. Simon insured under his own policy and is a golf cart an uninsured motor vehicle? Do we have to agree with you that the shoulder is part of the roadway to find that there's no issue of fact? Well, I actually don't think you do because the contract says if it's being operated on the public road or public roads. I don't remember if it's pluralized or not. It's plural. Is it pluralized? Yeah. So, again, the contract is interpreted against Stonegate. And so if there is a reasonable, plausible decision or answer that it is on the roadway, then we find in favor of coverage. And since at least two wheels and a substantial part of the golf cart were still on blacktop, I believe that the answer is that there is a good faith interpretation of these uncontested facts that, in fact, it was on the public roads at the time of the incident, even though two wheels may have been at the intersection of grass, dirt, and blacktop. And just for my clarification, this fog line on the right side of the road, there's a blacktop to the right of that. Correct. So your evidence was that at least two wheels were on blacktop, whether within or without the fog line? Correct, Your Honor. Okay. Not all four wheels. Mr. Shellis apparently is contending that there's a question of fact as to whether all four wheels were off the blacktop. He does appear to be contending that. I believe it is a mischaracterization of the testimony of both Mr. Simon and Mr. McGinnis. Very good. Anything else? No. Any other questions? Okay, thank you. Thank you. Very briefly, the side of the road where the front of the wheel was was to the right of the fog line, as he just said. I'm sorry? The wheels that he says were on what he calls pavement was to the right of the fog line and not in a lane. The shoulder is not part of the roadway. Just so we're clear, you're not disputing that he had at least two wheels on blacktop, whether it was to the left or right of the fog line you're disputing? I'm not sure the shoulder is blacktop the way that the testimony was. It might have been the way the pictures look and the way that the testimony was, it was stony, I guess you would say. I'm not sure that the shoulder is completely blacktop. But let's say it's somewhat blacktop. Well, the shoulder, as I look at that picture, it looks like the same consistency on both the left and right of that fog line. The roadway consistency. Then when you get further, further to the darker shade there, my impression of looking at it as an unreasonable man, it's dirt. Yes, there is partial pavement, dirt, and grass. And as Justice Simon mentioned, when you look at the picture, this is dirt, this is partial pavement, this is grass. And I would contest that being on the shoulder, even with most of your car not on the shoulder, by the way, only part of it, that that is the roadway. And we know that to be true because the golf cart is not manufactured for use on roadways. It's not manufactured for use on shoulders. And the evidence is uncontested of that. It's manufactured for use on cart paths, which are petunias, which are blacktop. But I understand that. It's not like they were taking this golf cart and running it up a mountain. No, of course not. But the definition, as Justice Mitva mentioned, I put last time, to print a small on these policies, says, while not on the public road, if counsel's contention is that the shoulder is the public road, then they were on the public road. So that would be a question of law. Because you don't have any facts that he was not at least two wheels on the blacktop road. It might have been one or two. I remember the testimony was one wheel, but it might have been one or two, yes. Was that in the affidavit that had been filed? Right, the deposition in the affidavits. And when you read them together, the depositions in the affidavits, all the depositions in affidavits, we argued they were not completely consistent about where this vehicle was. And as Justice Simon happened to mention several times, how when it turned, the whole thing turned over on the grassy median. So I'm not sure that counsel's explanation of the affidavits and everything was exactly consistent when you look at it. We think that's a question of fact of whether they were on the public roads. As to your answer to your question, yes, you must decide as a matter of law whether the shoulder is the public road. I cited cases that it is not the public road. And the reason I cited those cases is even for vehicles, we are not required to maintain the shoulder for safe use by vehicles. And I cited a case on that. So if a vehicle is driving on the shoulder and sees the city and says, there's a pothole or there's a stone or something on there, the cases say, you're not supposed to be there. It's not a public road. We don't have to maintain it for a vehicle. So that's why I'm emphasizing to you the answer to your question is no, the shoulder, even if the front two wheels were on it, it's simply not the public road. It is definitely right of the front line. And it is not a public road. And that may be a legal question, but I believe it's a legal question in our favor because it's not the public road. We thank you for your opportunity. We have spoken to two insurance cases in a row, I'm sure. Fascinating, fascinating for the court. Have a Merry Christmas and a Happy New Year. Thank you. Thank you. Thank you, both counsel. We take this matter under advisement of the court to stand for recess. Thank you. Thank you.